# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

### *People v. Kladis*, 2011 IL 110920

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. MARINA KLADIS, Appellee. |
| Docket No. | 110920 |
| Filed | December 30, 2011 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | A squad-car video recording of a misdemeanor DUI arrest was discoverable, and there was no abuse of discretion in sanctioning its destruction, subsequent to a timely request to produce, by barring the arresting officer's testimony as to what was on the tape. |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. William H. Wise, Judge, presiding. |
| Judgment | Affirmed; cause remanded. |

| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield, and Anita Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Annette Collins and John E. Nowak, Assistant State's Attorneys, of counsel), for the People. |
|---|---|
| | Edward M. Maloney, of Ahern, Maloney, Moran & Block, of Skokie, Louis A. Berns, of Favil David Berns & Associates, LLC, of Northlake, Robert B. Marcus and Michael Maksimovich, of Lyons, and Katie M. Anderson, of Chicago (Ralph Ruebner, of Chicago, of counsel), and Danielle L. Berns and Nikki G. Ashmore, law students, for appellee. |
| Justices | JUSTICE FREEMAN delivered the judgment of the court, with opinion. Chief Justice Kilbride and Justices Thomas, Garman, Karmeier, Burke, and Theis concurred in the judgment and opinion. |

## OPINION

¶ 1      Defendant, Marina Kladis, was charged with driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(2) (West 2006)). She requested that the State produce the video recording of the stop made by the camera located in the arresting officer's vehicle. After the State destroyed the recording, the circuit court of Cook County granted defendant's motion for sanctions and barred the State from introducing testimony concerning what was contained on the videotape. The State filed a certificate of substantial impairment and a notice of appeal. The appellate court affirmed. 403 Ill. App. 3d 99. We granted the State's petition for leave to appeal and now affirm the judgment of the appellate court.

¶ 2                       BACKGROUND

¶ 3      On May 3, 2008, defendant was arrested for DUI by Northlake police officer Phillip Gaske. On May 8, 2008–five days after her arrest and 25 days prior to the first court date on June 3, 2008–defendant filed and hand delivered to the State's Attorney's office a petition to rescind her statutory summary license suspension. Defendant also filed and delivered on the same date a document captioned "Notice to Produce at Summary Suspension Hearing." The notice was premised upon our Rule 237 (Ill. S. Ct. R. 237 (eff. July 1, 2005)) and requested that at the first court date the State produce the arresting officer along with copies of various reports and "any and all video tapes of defendant" while she was in custody.

¶ 4      On June 3, 2008, at approximately 1:30 p.m., the parties appeared in court for the first

time.[1] Because the State had not yet produced the materials defendant had previously requested, defense counsel made an oral motion for discovery, pursuant to *People v. Schmidt*, 56 Ill. 2d 572 (1974), which included the videotape. Because the State claimed that it did not know whether such a tape existed, Officer Gaske–who was present for the hearing–was questioned. Gaske confirmed that his squad car had a camera mounted to the windshield which had recorded his encounter with defendant.

¶ 5    The State thereafter agreed to produce all the requested materials–including the videotape–to defense counsel.[2] Later in the day on June 3, the State mailed written discovery to counsel and a request for the video recording to the Northlake police department. By agreement, the hearing on defendant's petition to rescind the statutory summary suspension of her driver's license was entered and continued to June 17, 2008.

¶ 6    When the parties returned to court on that date, the State tendered to defense counsel a two-page business record from the Northlake police department. This document stated that pursuant to departmental policy, video recordings are automatically purged within 30 days of arrest, and that the tape requested by defendant had been erased at 4:24 a.m. on June 3, 2008, just hours before the parties first appeared in court. Because the requested evidence had been destroyed, and in view of the fact that, but for its absence, defendant would have been ready to proceed on her petition to rescind the statutory summary suspension, the court granted her leave to file a written motion for sanctions against the State.[3] The court scheduled a hearing on the sanctions motion for June 26, 2008, and further ordered that the hearing on the petition to rescind the statutory summary suspension would proceed immediately after the court ruled on the motion for sanctions.

¶ 7    Upon their return to court on June 26, the parties discovered that the judge handling this case had been transferred, and they appeared before a different judge who was unfamiliar with what had previously transpired. The parties stipulated to the facts in the case up to that point, and then engaged in brief argument on defendant's sanctions motion.

¶ 8    The court found that the "Notice to Produce" which accompanied defendant's petition to rescind her statutory summary suspension placed the State on clear notice that she wished to have a copy of the video recording at the first court date–a fact which the State did not

---

[1]No transcripts exist for the June 3, 2008, court date or for the proceedings subsequently held on June 17, 2008. However, during a court hearing on June 26, 2008, the parties stipulated as to what transpired on those earlier dates.

[2]We note that at no time did the State dispute that it received defendant's Rule 237 request for production of the video recording, nor did the State object to defendant's oral *Schmidt* motion to preserve and produce the same recording referenced in her earlier request for production. The record, therefore, unquestionably establishes that the State was fully on notice regarding defendant's repeated requests to obtain the recording, a fact supported by its ready agreement during this hearing to produce it.

[3]This motion, which was premised on our Rule 219 (Ill. S. Ct. R. 219 (eff. July 1, 2002)), was filed on June 20, 2008.

dispute. The State, however, did nothing in response. The court observed that the State "could have called the police department and got the tape prior to the time that it ran out" or it "could have filed an answer *** stating it's not our obligation [to produce the tape] yet because we don't deem this to be a discovery motion *** [because it includes] things requested in here that we don't have to supply to you."

¶ 9 Noting that this was "the third case I have had like this in three weeks" where a defendant asked the State to preserve a video recording and it was destroyed, the court found the recording of defendant's traffic stop to be "an important piece of evidence" and held that imposition of a sanction against the State for its destruction was proper. The court determined that it would bar the State from introducing testimony relating to what was contained on the tape. However, because no one had seen the recording, defendant called Officer Gaske to establish its contents and thereby clarify the scope of the court's ruling.

¶ 10 Gaske testified that the in-car video system begins recording five seconds prior to the activation of the emergency lights. At that time, the microphone he wears is also activated.[4] According to Gaske, the tape would have captured the following: images of defendant's car five seconds prior to the stop; the manner in which defendant pulled over and curbed her vehicle; defendant's actions when he approached her vehicle; the manner in which defendant opened her car door and exited her vehicle; and defendant's performance of the field sobriety tests. Gaske stated that he turned off the emergency lights prior to transporting defendant to the station, and it was then that the recording ended.

¶ 11 The court then clarified its sanction ruling, holding that "[t]he video may not be used for any purpose from five seconds prior to the lights going on at the time that the defendant was stopped getting out of the car until she was taken away via the arrest." The court specified, however, that any driving or actions of defendant prior to this were admissible, as were any of her actions after she was placed under arrest.

¶ 12 The court then proceeded to conduct the hearing on defendant's petition for recision of the statutory summary suspension of her driver's license. Although defendant answered ready, the State requested leave to immediately file a notice of appeal of the sanctions ruling. However, because the State did not ask the court to certify an interlocutory appeal on the sanctions issue and because there was no final judgment in the statutory summary suspension matter at that time, the State's request was denied.

¶ 13 The hearing on defendant's petition proceeded. Based upon the evidence presented, the court held that Officer Gaske had no probable cause to stop, detain and arrest defendant. Accordingly, defendant's petition to rescind the statutory summary suspension of her driver's license was granted.

¶ 14 Defense counsel then made an oral motion to quash arrest and suppress evidence in

---

[4]After defendant's arrest, Gaske realized that the microphone was not on, and believed that the recording of that encounter would not have had audio.

defendant's criminal DUI case. The court instructed counsel to file a written pleading[5] and the parties set a return date by agreement. The State then renewed its request for leave to file an appeal, which was granted. The State thereafter filed an appeal of the sanctions ruling in the statutory summary suspension case. However, it later voluntarily dismissed that action. Accordingly, that ruling is not at issue here.

¶ 15    The parties returned on September 2, 2008. The court inquired of the State whether it wished to "relitigate the sanctions for purposes of trial." The State responded that "[t]here is going to be a lot of the same testimony, and we were here, basically, for arguments and for ruling [on] the criminal case at hand." The court then granted defendant's motion for sanctions in the DUI case, stating that its ruling would be "exactly the same" as on June 26. The court held that "the video may not be used, or any testimony regarding what is on the video pertaining to just before the officer stopped the defendant and the time that the defendant was placed in the squad car, which would mean anything that happened on the street prior to her being placed in the squad car." As it had in the summary suspension matter, the court again clarified that any relevant evidence of defendant's conduct which occurred before and after the recording would be admissible.

¶ 16    After the court had ruled, the State maintained that the court's decision on the sanctions motion substantially impaired its ability to prosecute defendant. Based upon the court's understanding of the State's position, it granted the State leave to file a certificate of substantial impairment and a notice of appeal of the sanction order.

¶ 17    The appellate court upheld the sanctions imposed by the trial court in the DUI case. 403 Ill. App. 3d 99. Applying *Schmidt*, the court held that the video recording was discoverable, and that the State was placed on notice that it should not be destroyed. Nevertheless, the State took no action in response to defendant's discovery request, which set the stage for the deletion of the recording. The appellate court further determined that the sanction imposed by the trial court was proportionate to the State's discovery violation and that there was no abuse of discretion.

¶ 18    We granted the State's petition for leave to appeal (Ill. S. Ct. R. 315 (eff. Feb. 26, 2010)).

¶ 19                                        ANALYSIS

¶ 20    The State does not dispute that it was placed on notice by defendant to produce the recording of her stop and arrest in the civil statutory summary suspension proceedings. The State also does not contest that its inaction resulted in the destruction of this recording, and, in fact, concedes that the sanction was proper in that matter.

¶ 21    The State does contend, however, that its conduct has no import with respect to defendant's criminal DUI case. Asserting that discovery in misdemeanor actions is strictly limited by our decision in *People v. Schmidt*, 56 Ill. 2d 572 (1974), and noting that video recordings are not included within *Schmidt*'s list of discoverable items, the State maintains

---

[5]Defendant filed her "Motion to Quash Arrest and Suppress Evidence Illegally Seized" on July 10, 2008.

that it had no obligation to produce the recording. The State therefore concludes that its failure to preserve the recording was not sanctionable in the DUI case and the trial court abused its discretion by doing so. We disagree.

¶ 22                                    A. Discovery Violation

¶ 23        The State contends that because the trial court had no discretion to order discovery in a misdemeanor case beyond the limited areas set forth in *People v. Schmidt*, 56 Ill. 2d 572 (1974), it therefore erred in imposing sanctions against the State. A trial court's decision to impose sanctions is reviewed under an abuse of discretion standard. *People v. Ramsey*, 239 Ill. 2d 342, 429 (2010). A trial court abuses its discretion when its decision is "fanciful, arbitrary, or unreasonable to the degree that no reasonable person would agree with it." *People v. Ortega*, 209 Ill. 2d 354, 359 (2004).

¶ 24        We must first determine whether the State's failure to produce and preserve the video recording of the stop and arrest in defendant's misdemeanor DUI case constitutes a discovery violation. This court addressed the scope of discovery required in a misdemeanor case nearly 40 years ago in *People v. Schmidt*, 56 Ill. 2d 572 (1974). There, the defendant was charged with a misdemeanor DUI. She sought pretrial discovery of various reports, including a "Driving While Intoxicated Arrest Report," which the State refused to produce. *Id*. at 573.

¶ 25        In holding that the requested report should have been tendered to the defendant, we observed that it was only one of a number of items a misdemeanor defendant may discover:

> "The State is required to furnish defendants in misdemeanor cases with a list of witnesses (Ill. Rev. Stat. 1971, ch. 38, par. 114-9), any confession of the defendant (Ill. Rev. Stat. 1971, ch. 38, par. 114-10), evidence negating the defendant's guilt (*Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194), and, in this particular case, the results of the breathalyzer test (Ill. Rev. Stat. 1971, ch. 95½, par. 11-501(g)). Additionally, the report which the defendant seeks will be available at trial for use in impeachment of the prosecution witness who prepared it. (*People v. Cagle*, 41 Ill. 2d 528.)" *Id*. at 575.

This ruling was based on "the discovery provided [for] by case law and statute" at that time, and distinguished its limited scope from the broader discovery available for felony cases under our Rule 411. *Id*. at 574-75. Our decision to limit discovery in misdemeanor matters was based on "our awareness of the very substantial volume of less serious cases and the impact upon their expeditious disposition" if broader discovery were required. *Id*. We concluded that there was "no reason to depart from th[e] view" that the scope of discoverable items noted in that opinion was "adequate for the lesser offenses" at the time of that ruling. *Id*. at 575.

¶ 26        The State misapprehends our decision in *Schmidt* and interprets it in a far too narrow manner. *Schmidt* determined the scope of discovery in misdemeanor cases by considering relevant decisions, statutes, and custom and practice as it existed in 1974. From this survey, the *Schmidt* court drew together a number of items which share important evidentiary value and are relevant to those charged with offenses in crafting a defense. Indeed, our case law with respect to discovery at that time was clear. We previously held that pretrial discovery

"presupposes a range of relevance and materiality which includes not only what is admissible at the trial, but also that which leads to what is admissible." *Krupp v. Chicago Transit Authority*, 8 Ill. 2d 37, 41 (1956). The State overlooks the nature and relevancy of these discovery items, instead focusing on the incorrect concept that *Schmidt* set forth a rigid list which it believes should remain static and not take into account the fundamental changes which have occurred in law and society since that ruling.

¶ 27　　Relevancy is "determined by reference to the issues, for generally, something is relevant if it tends to prove or disprove something in issue." *Bauter v. Reding*, 68 Ill. App. 3d 171, 175 (1979). In the nearly four decades since we decided *Schmidt*, video recordings made by in-squad car cameras in misdemeanor DUI cases have become as relevant to the issue of proving or disproving guilt as the materials specifically mentioned in *Schmidt*. As such, allowing their discovery furthers the objectives of pretrial discovery to "enhance the truth-seeking process, to enable attorneys to better prepare for trial, to eliminate surprise and to promote an expeditious and final determination of controversies in accordance with the substantive rights of the parties." *D.C. v. S.A.*, 178 Ill. 2d 551, 561 (1997).

¶ 28　　Since the time of *Schmidt*, the use of video recordings as evidence at trial has become a common practice to allow a defendant the opportunity to present an effective defense and to further the truth-seeking process. We recently reaffirmed the general admissibility of such evidence (*People v. Taylor*, 2011 IL 110067), and courts across the country are increasingly relying on video recordings to present an objective view of the facts in a case. See, *e.g.*, *Scott v. Harris*, 550 U.S. 372 (2007) (relying on a squad car video recording, Supreme Court reversed lower court's denial of summary judgment on claim against the officer for the use of excessive force; Court found that a videotape capturing the events in question clearly contradicted the version of the story told by the driver and adopted by the court of appeals, and stated that the court of appeals should have viewed the facts in the light depicted by the videotape); *United States v. Prokupek*, 632 F.3d 460 (8th Cir. 2011) (reversing the district court's denial of the defendant's motion to suppress on the basis that the officer's testimony at the suppression hearing was clearly contradicted by his contemporaneous statements captured on the squad-car video recording).

¶ 29　　In sum, we conclude that the routine video recording of traffic stops has now become an integral part of those encounters, objectively documenting what takes place by capturing the conduct and the words of both parties. We therefore hold that this important and relevant evidence falls within the scope of materials held to be discoverable under *Schmidt*. We therefore clarify that under *Schmidt*, these video recordings are discoverable in misdemeanor DUI cases.

¶ 30　　This conclusion is supported by several recent legislative enactments regarding recordings of traffic stops made by law enforcement officers. Although the passage of these laws occurred subsequent to defendant's arrest in this case, the great importance placed by the General Assembly upon the production and preservation of video recordings made by squad car cameras during law enforcement actions confirms our recognition of their significant evidentiary value and relevance.

¶ 31　　In late 2008 our legislature mandated that Illinois State Police squad cars be equipped

with recording equipment. 20 ILCS 2610/30(b) (West 2008) (Pub. Act 95-1009 (eff. Dec. 15, 2008)). The law specified that both video and audio must be captured (*id.*) and required that these recordings be maintained for a storage period of at least 90 days before being destroyed. 20 ILCS 2610/30(f) (West 2008).

¶ 32    The following year, the General Assembly clarified and broadened the production and preservation safeguards for police recordings. It established the general rule that when any law enforcement agency makes an in-squad video and audio recording in connection with either law enforcement or investigative duties, that recording shall be retained for a minimum period of 90 days. 720 ILCS 5/14-3(h-15) (West 2010) (Pub. Act 96-670 (eff. Aug. 25, 2009)). Significantly, the legislature has also mandated an extended period of storage for certain recordings. Where "the recordings *** are made as a part of an arrest or *** are deemed evidence in any criminal, civil, or administrative proceeding" they cannot be destroyed except "upon a final disposition and an order from the court." *Id.* We note that this heightened protection is triggered either where, as here, an arrest occurred or where the recording is considered to be evidence in *any* criminal, civil or administrative proceeding. Significantly, the General Assembly placed no restriction on this latter factor, encompassing all proceedings.

¶ 33    The transcript of the debates of the 2009 enactment reveals that the General Assembly intended that the routine recording of traffic stops by squad car cameras would be of benefit to both citizens and law enforcement agencies by providing an objective record of what occurred during the encounter. This is illustrated by remarks made by the sponsor of this provision, who explained that "[i]t's a tool for law enforcement, but I also believe it is a tool for the citizens, too, because then there is actual proof of what was said or what was done. So I think it's a protection for both." 96th Ill. Gen. Assem., House Proceedings, April 2, 2009, at 84-85 (statements of Representative Dugan).

¶ 34    These enactments express the clear legislative intent that the purpose of recording traffic stops and preserving these recordings for later production is to assist in the truth-seeking process by providing objective evidence of what occurred between the law enforcement officer and the citizen. As noted in the legislative history, the General Assembly enacted these laws with the view that these recordings could be useful to both the State and the defendant. If the recording reflects the defendant committing an offense, the State could use it to cement his or her guilt. The reverse is also true: if the recording does not clearly reflect commission of a crime, the defendant could use it in support of his or her defense. In either instance, the recording assists the trier of fact in seeking the truth and at arriving at a just result.

¶ 35    The State contends, however, that requiring discovery of video recordings in misdemeanor DUI cases is unduly burdensome and will delay the judicial process. Noting that the limited scope of misdemeanor discovery set forth in *Schmidt* was partially driven by consideration of the large number of misdemeanor actions and the desire to efficiently move them through the system, the State contends these same considerations apply with equal force today. We believe that the particular facts of this case undermine the State's general assertions.

¶ 36    The record indicates that defendant's request was not one that was unique in any way. The State never formally objected to the request, nor did it contend that it fell outside of *Schmidt*. Further, we note that during oral argument before this court, counsel for the State was asked to comment on the fact that the State had readily agreed to produce and preserve the videotape in this matter. He responded: "We have no problem tendering these videos in a particular case. If the defendant asks for it, and it is available, we will do so. *** It's just a matter of collegiality."

¶ 37    The video recording is relevant and admissible evidence because it reveals what transpired during the traffic stop which serves to further the truth-seeking function of a trial. This evidence may be helpful to both the defendant and the State. Indeed, the flow of cases actually going to trial may be eased upon allowing defendants and their counsel to review these recordings: those which reflect events favorable to the State may result in defendants willing to enter pleas which they otherwise may not have contemplated. This also advances the purpose of our DUI statutes to ensure that our roads remain safe from impaired drivers.

¶ 38    We therefore agree with the courts below that upon receiving the written Rule 237 notice to produce the video recording five days after defendant was arrested–and 25 days before it was destroyed–the State was placed on notice and should have taken appropriate steps to ensure that it was preserved.[6]

¶ 39    In sum, we hold that the trial court did not abuse its discretion in finding that the video recording of defendant's stop and arrest was subject to discovery in her misdemeanor DUI case and that the State committed a discovery violation by allowing the destruction of the recording. We next address the question of whether the sanction imposed by the trial court was appropriate for the discovery violation.

¶ 40                    B. Reasonableness of the Discovery Sanction

¶ 41    The State contends that the discovery sanction imposed by the trial court was too harsh for the circumstances presented in this case and, therefore, amounted to an abuse of discretion. According to the State, the sanction was "effectively a dismissal of the charges as it prevented the officer from testifying about all of the relevant facts showing that defendant was driving under the influence of alcohol." We reject the State's contentions.

¶ 42    The correct sanction to be applied for a discovery violation is a decision appropriately left to the discretion of the trial court, and its judgment shall be given great weight. *People v. Morgan*, 112 Ill. 2d 111, 135 (1986). The trial court is in the best position to determine an appropriate sanction based upon the effect the discovery violation will have upon the

---

[6]Although the Rule 237 notice was filed in the civil summary suspension proceeding, the State explained at oral argument that the summary suspension proceeding and the criminal DUI case proceed in tandem, before the same judge and with the same State's Attorneys handling both matters. Although the better practice would be for the defendant to request production of the video recording in both proceedings, we have no doubt that in this case the State was aware of the need to preserve the recording. Indeed, defendant also made an oral motion for discovery pursuant to *Schmidt* during the proceedings on the first court date.

defendant. *People v. Koutsakis*, 255 Ill. App. 3d 306, 314 (1993). As stated, an abuse of discretion exists only where the decision of the trial court is fanciful, arbitrary, or unreasonable to the degree that no reasonable person would take the view adopted by the trial court. *Ortega*, 209 Ill. 2d at 359.

¶ 43    The record clearly establishes that the discovery sanction imposed by the trial court did not preclude the State from prosecuting defendant. The court's sanction ruling was narrowly tailored, and provided that "[t]he video may not be used for any purpose from five seconds prior to the lights going on at the time that the defendant was stopped getting out of the car until she was taken away via the arrest." Notably, the court also clearly specified that any driving or actions of defendant prior to the start of the recording were admissible, as were any of her actions after she was placed under arrest.

¶ 44    Accordingly, under the court's ruling, Officer Gaske was not barred from testifying; rather, his testimony was limited to observations regarding events other than those captured on the purged recording. Thus, the State could have questioned Officer Gaske concerning any erratic driving on the part of defendant prior to her being stopped. Gaske could also have been questioned about defendant's behavior after he deactivated the lights and placed her in his squad car to transport her back to the police station, which occurred immediately after defendant performed the field sobriety tests. Gaske could have offered any observations of indications of intoxication at that time, including whether defendant exhibited bloodshot and glassy eyes, slurred speech or an odor of alcohol. He also could have testified to any problems with balance or dexterity defendant may have had as she arrived at the police station for processing. Thus, contrary to the State's assertion that the court's sanction "removed all possible proof that defendant had been driving under the influence of alcohol," the State could have questioned Gaske on any of these points. It declined to do so.

¶ 45    As stated, the authority to impose reasonable sanctions for discovery violations lies within the sound discretion of the trial court. Here, the court properly exercised its discretion in choosing from the spectrum of available options and narrowly tailoring its sanction to bar the State from introducing testimony regarding what was contained in the video recording. Contrary to the State's assertion that the sanction was disproportionate to the discovery violation because it "excluded all evidence that defendant was guilty beyond a reasonable doubt," the record establishes that the State made the conscious decision not to participate in the trial and to forgo the opportunities available to present evidence apart from that which was barred under the sanction.

¶ 46    Accordingly, we hold that the trial court did not abuse its discretion in imposing this sanction against the State. We therefore affirm the sanction order entered by the trial court against the State. We remand this cause to the trial court for further proceedings on the State's prosecution of defendant's misdemeanor DUI case.

¶ 47                                                    CONCLUSION

¶ 48    For the foregoing reasons, the judgment of the appellate court is affirmed. This cause is remanded to the circuit court for further proceedings consistent with this opinion.

¶ 49        Affirmed;

¶ 50        cause remanded.