# Illinois Official Reports

## Appellate Court

***People v. Moravec*, 2015 IL App (1st) 133869**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. RICHARD MORAVEC, Defendant-Appellee. |
| District & No. | First District, Second Division<br>Docket No. 1-13-3869 |
| Filed | November 3, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CR-13856; the Hon. William H. Hooks, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, John E. Nowak, and Samuel C. Ray, Assistant State's Attorneys, of counsel), for the People.<br><br>Timothy R. Roellig, of Novelle & Roellig, LLC, of Chicago, for appellee. |
| Panel | JUSTICE SIMON delivered the judgment of the court, with opinion.<br>Justices Pierce and Hyman concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant Richard Moravec was charged with one count of aggravated driving under the influence of alcohol. Defendant filed a "Motion *in Limine* and For Sanctions" to limit the State's proof at trial because the State did not produce certain videos from the police observational devices (POD cameras) located in the proximity of defendant's arrest. The trial court granted defendant's motion and precluded the arresting officers from testifying at trial. The State filed a motion to reconsider which the trial court denied as well. The State appeals the trial court's order granting defendant's motion *in limine* and for sanctions as well as the trial court's ruling denying the State's motion to reconsider. On appeal, the State argues that the trial court erred in granting defendant's motion *in limine* because defendant failed to establish that the State committed a discovery violation. In the alternative, the State argues that the trial court abused its discretion by sanctioning the State with excluding of the testimony of the police officers. For the following reasons, we affirm the trial court's judgment.

¶ 2                                           I. BACKGROUND

¶ 3    The following relevant facts for the issue raised on appeal were extracted from a stipulation that the parties agreed to prior to the hearing on defendant's motion *in limine* and for sanctions. On June 6, 2012, at approximately 9:05 p.m. Chicago police officers conducted a traffic stop after defendant's alleged traffic violation at the intersection of Thomas Street and Western Avenue in Chicago. According to the stipulation, Officer Constantine, if called to testify, would state that he responded to a call for assistance, and proceeded to 1012 North Western Avenue where he arrested defendant for driving under the influence of alcohol (DUI) after conducting certain field sobriety tests on defendant. Officer Constantine estimated that the stop took place at approximately 600 feet south of 2402 West Thomas Street.

¶ 4    According to the stipulation, defendant, if called to testify, would state that he was stopped immediately after making a right-hand turn from eastbound Thomas Street to southbound Western Avenue at a location approximately 50 feet south of the intersection of Thomas Street and Western Avenue at 1042 North Western Avenue. The stipulation also stated that defendant would have testified that he remained at that location until 9:22 p.m. when Officer Constantine arrested him and transported him to the station. Defendant was ultimately charged with aggravated driving under the influence of alcohol due to his two prior DUIs.

¶ 5    The stipulation also provided that the Chicago police department maintained three POD cameras near the place where defendant's arrest took place: one was located at 2402 West Thomas Street, the northwest corner of Thomas Street and Western Avenue, one was located at 1132 North Western Avenue, and another one was located at 2356 West Division Street, the southeast corner of Western Avenue and Division Street. The office of emergency management communications of the police department (OEMC) maintained a video camera at 1198 North Western Avenue, the southwest corner of Division Street and Western Avenue. The stipulation noted that all these cameras had a 15-day retention period for the video recordings that they made, and that, at the time of installation, the cameras were set to rotate, but not conduct a complete 360 degrees rotation. The stipulation also indicated that the primary area of concern and viewing of these specific POD cameras was Western Avenue north and south from their location.

¶ 6        On June 14, 2012, defendant served by certified mail, a subpoena *duces tecum* on the Chicago police department requesting, in relevant part: "[A]ll audio and video tape recordings, including but limited to in-car and in-station videos *** all relating to the arrest of the defendant, by the Chicago Police Department on June 6, 2012, at approximately 9:06 p.m." The subpoena was received by the Chicago police department on June 15, 2012, and filed with the clerk of the circuit court of Cook County on June 19, 2012, 13 days after defendant's arrest.

¶ 7        On June 19, 2012, defendant filed his "Motion for Prehearing Discovery" where he requested "that the Cook County State's Attorney's Office promptly furnish to defense counsel [a]ll reports, statements and memos, *** including in-car and in-station video and audio recordings." On the same date, defendant filed his "Motion For a List of Witnesses, Statements, Admissions Confessions of Defendant, Bill of Particulars, and Preservation and Production of Evidence" where defendant requested that the State produce "all audio and tape recordings, including but limited to in-car and in-station videos."

¶ 8        On June 21, 2012, the Chicago police department record services responded to defendant's subpoena stating that no in-squad video relating to defendant's arrest was found. On June 27, 2012, defendant sent a letter to the Chicago police department requesting compliance with the previously filed subpoena. Defendant attached a copy of the subpoena to the letter. On June 29, 2012, the Chicago police department issued a written response which stated in relevant part: "[t]he following is a response to the request for subpoenaed documents for the above referenced case. *** Item 2: Any on-scene video and/or audio are not retained at the district level and can be requested from Unit 125/Information Services Division. Item 3: Station video unable to be copied due to technical issues with video system." On July 30, 2012, the OEMC responded to the subpoena and informed defendant that "they were unable to pull requested video for 1012 N. Western" from the date of defendant's arrest because the cameras were "past retention and had been written over."

¶ 9        On August 14, 2012, defendant filed another "Motion For a List of Witnesses, Statements, Admissions Confessions of Defendant, Bill of Particulars, and Preservation and Production of Evidence" where he again requested "all audio and video tape recordings, including but limited to in-car and in-station videos."

¶ 10        On May 1, 2013, defendant filed his "Motion *in Limine* and For Sanctions" and tendered the trial court a copy of the Illinois Supreme Court case *People v. Kladis*, 2011 IL 110920. In his motion for sanctions, defendant argued that he had served the subpoena requesting the production of video recordings within 13 days of his arrest and then he requested compliance with the subpoena on at least two separate proceedings before the trial court. Defendant requested that the court impose sanctions by limiting the proofs and evidence to be presented by the prosecution based upon the State's failure to comply with defendant's motions for discovery and the subpoena *duces tecum* in violation of defendant's constitutional rights.

¶ 11        In its response, the State indicated that the nearest city POD camera to defendant's arrest was located at the intersection of Thomas Street and Western Avenue, approximately 500 to 600 feet away from defendant's arrest. The State contended that the city POD cameras do not rotate 360 degrees and merely capture and record a few seconds at a time and then continue their rotation. The State claimed that the POD cameras would only have recorded "part, if any" of defendant's arrest. The State also asserted that there was no evidence that the Cook County State's Attorney's Office or the OEMC negligently, intentionally, or willfully failed to preserve and produce the POD camera videos relating to defendant's arrest. The State

requested that the court conclude that the erased video contained materials favorable to defendant, in the event that the trial court found a discovery violation.

¶ 12    On August 22, 2013, defendant filed his "Reply to People's Response" where he asserted that the Chicago police department maintained four cameras "at or near the vicinity" of defendant's arrest and listed all the locations: one camera was located at 2402 West Thomas Street, one at 1132 North Western Avenue, one at 2356 West Division Street, and another one at 1198 North Western Avenue. Defendant claimed that the cameras individually or in total would have depicted defendant's interaction with the officers from the moment he committed the alleged initial traffic violation at the intersection of Western Avenue and Thomas Street, until he was placed in the police vehicle and the subsequent search of defendant's vehicle. Defendant requested that the trial court impose sanctions against the State based upon the State's failure to comply with defendant's subpoena and discovery motions.

¶ 13    Following the parties' oral argument, the trial court granted defendant's motion *in limine* to prevent the testimony of the police officers and stated that "without there being explanation as to a legitimate basis for the tape not being available, that has to be construed against the State." The trial court asserted that it granted defendant's motion *in limine* and for sanctions pursuant to *Kladis*, a case where the supreme court upheld the judgment of the appellate court that granted the defendant's motion for sanctions and barred the State from presenting testimony as to the events surrounding the defendant's arrest after it was discovered that the State destroyed the police squad car's recording of the defendant's arrest. *Id*. ¶ 29.

¶ 14    On October 8, 2013, the State filed a motion to reconsider where it argued that the trial court had improperly relied on *Kladis* in granting defendant's motion *in limine*. The State contended that *Kladis* was a case that decided a discovery violation pertaining to in-squad cameras where the instant case involved the city's POD cameras located at least 500 feet away from the place of defendant's arrest. In addition, the State argued that defendant's subpoena to the police department did not specifically request POD camera footage and did not list the location of the POD cameras. The State argued that, because defendant did not properly request the POD camera videos, the Chicago police department was not put on notice so that it would be able to comply with defendant's discovery requests. On November 21, 2013, following the parties' arguments, the trial court denied the State's motion to reconsider. This appeal followed.

¶ 15                                    II. ANALYSIS

¶ 16    On appeal, the State argues that this court should reverse the trial court's ruling granting defendant's motion *in limine* and for sanctions that precluded the State from presenting testimony from the eyewitness police officers regarding defendant's arrest for aggravated DUI. The State contends that the trial court erred when it found that the State committed a discovery violation for several reasons. First, the State argues that defendant did not request in his subpoena *duces tecum* or in any of his discovery motions the production of the city's POD camera footage. Next, the State claims that defendant failed to establish a discovery violation pursuant to Illinois Supreme Court Rule 415(g)(i) (eff. Oct. 1, 1971) or pursuant to the due process clause (Ill. Const. 1970, art. I, § 2). The State also contends that the trial court erred when it relied on *Kladis* to find that defendant's due process rights had been violated. Finally, the State argues that, if a discovery violation occurred, the sanction imposed by the trial court

precluding the officers from testifying amounted to a dismissal of the case against defendant and constituted an abuse of discretion.

¶ 17 In turn, defendant argues that several of the issues raised by the State in this appeal are barred by waiver. Defendant contends that the State did not raise in the trial court the arguments that defendant's subpoena and discovery motions did not properly request the POD camera footage and the argument that defendant failed to establish a discovery violation pursuant to the due process clause and pursuant to Rule 415(g)(i). In addition, defendant contends that the State conceded the discovery violation when the State sought, in the proceedings before the trial court, that limited sanctions be imposed.

¶ 18 We review for an abuse of discretion a trial court's decision to impose sanctions. *People v. Kladis*, 2011 IL 110920, ¶ 23. The trial court abuses its discretion where its ruling is arbitrary, fanciful, or unreasonable or no reasonable person would take the view adopted by the trial court or where its ruling rests on an error of law. *People v. Strobel*, 2014 IL App (1st) 130300, ¶ 7.

¶ 19 A. Discovery Request

¶ 20 Initially, the State challenges the sufficiency of defendant's request for production of the videos related to defendant's arrest as stated in defendant's subpoena and his subsequent discovery motions. The State claims that defendant's repeated requests for videos "*limited to in-squad and in-station*" footage effectively undermined defendant's ability to obtain any videos because the record indicated that no in-squad and no in-station videos of defendant's arrest existed. (Emphasis added.) The State contends that defendant also failed to include any language requesting the POD camera videos and that defendant first mentioned the POD camera videos in February 2013, well beyond the 15-day retention date to preserve the videos.

¶ 21 In addition, the State argues that defendant, in his motion *in limine*, misquoted the language of his own subpoena alleging that the subpoena requested the production of videos "including *but not limited to in-car and in-station videos*." (Emphasis added.) The State argues that the trial court relied on this inaccurate statement when granting defendant's motion *in limine* because the court reasoned that the subpoena was sufficient to put the police on notice, when in fact, the subpoena merely gave the State and the police department notice of defendant's request regarding the in-squad and in-station videos and not the POD camera videos.

¶ 22 In response, defendant contends that the State waived its argument that the language of the subpoena and the discovery motions failed to put the State on notice about defendant's request for POD camera videos because this issue was not before the trial court. Instead, defendant argues that the State raised, for the first time in its motion for reconsideration, the argument that defendant's request did not include POD camera videos because such videos are not linked to a specific arrest. Furthermore, defendant contends that the State, for the first time on appeal, raises the argument that the language "limited to in-squad and in-station" did not give the State enough notice about defendant's request for POD camera videos. Defendant also claims that the State conceded that defendant made a proper request for production and that his request for videos "but limited to in-squad and in-station" as stated in the subpoena as well as in the motions for discovery was an inadvertent typographical error that did not absolve the State from its failure to comply with the request.

¶ 23 The doctrine of waiver precludes consideration on appeal for issues not raised in the trial court. *People v. O'Neal*, 104 Ill. 2d 399, 407 (1984). Forfeiture or procedural default prevents

litigants from asserting on appeal objections different from the ones advanced in the trial court. *People v. Heider*, 231 Ill. 2d 1, 18 (2008). The waiver principle encourages the parties to raise issues before the trial court, allowing the court to correct its own errors and consequently disallowing the parties to obtain a reversal through inaction. *People v. Herron*, 215 Ill. 2d 167, 175 (2005).

¶ 24 We agree with defendant that the State's arguments are barred by waiver. The State did not argue either in its response to defendant's motion *in limine* or at the hearing on defendant's motion that defendant's subpoena or his discovery requests failed to include a proper request for POD camera videos. The record reflects that the State unsuccessfully raised this argument for the first time in its motion for reconsideration after the trial court had granted defendant's motion *in limine* and for sanctions. Because the State made this argument for the first time in the motion to reconsider, it is now waived. See *People v. Houston*, 407 Ill. App. 3d 1052, 1054 (2011) (noting that a new issue raised in a motion for reconsideration is forfeited on appeal absent a party's objection before the trial court).

¶ 25 In addition, the State's new argument on appeal that the language of the subpoena did not properly request the POD camera videos but solely concerned the in-squad and in-station videos is also waived because it was never raised in the trial court. See *Herron*, 215 Ill. 2d at 175 (a defendant who fails to make a timely trial objection forfeits the review of the issue on appeal); see generally *People v. Murray*, 379 Ill. App. 3d 153, 157 (2008) (defendant's speedy trial claim was forfeited on appeal where defense counsel never filed a motion to discharge or otherwise raise the issue in the trial court). Similarly waived is the State's argument that defendant misquoted his own subpoena when the State failed to object and to properly raise it during the proceedings before the trial court despite the State's characterization of this issue on appeal as the "crux of the issue before the trial court."

¶ 26 Waiver aside, the State's argument that defendant's discovery motions and subpoena did not properly indicate that defendant was requesting the POD camera videos is contradicted by the State's implicit admission that the defendant's requests were proper as reflected by the record. Specifically, the Chicago police department, the assistant State's Attorney and the OEMC all perceived the requests as incorporating the POD camera videos when, subsequently, both the Chicago police department and the OEMC conducted a search pursuant to defendant's subpoena and ultimately responded to defendant's request by stating that the requested material was overwritten. Neither the Chicago police department, nor the OEMC, nor the assistant State's Attorney responded to the subpoena by claiming that the request did not include the POD camera videos. As such, the State's argument that defendant did not properly request the POD camera videos, in addition to being forfeited, is not supported by the record.

¶ 27 B. Discovery Violation and the Sanctions Imposed

¶ 28 The State argues next that the trial court erred in granting defendant's motion *in limine* and for sanctions because defendant failed to establish a discovery violation pursuant to the due process clause when defendant never showed that the POD camera videos were material exculpatory evidence or that the State acted in bad faith. Alternatively, the State contends that defendant never established a discovery violation pursuant to Rule 415(g)(i) because defendant never alleged that the POD camera footage was material and, instead, defendant inaccurately claimed that the failure to preserve the city POD camera videos constituted a *per*

- 6 -

*se* discovery violation. The State argues that *Kladis* was a narrow decision which held that in-squad videotapes were discoverable in misdemeanor DUI cases and that the rule is not applicable to the present case which deals with POD camera videos located hundreds of feet away from the location of defendant's arrest.

¶ 29     Defendant, in turn, argues that the State's arguments are waived because the State did not raise the issue that defendant did not establish a discovery violation under the due process clause or under Rule 415(g)(i) in the trial court. Defendant contends that the State conceded that a discovery violation occurred when the State asked that limited sanctions, short of dismissal, be imposed. Defendant argues that the trial court properly applied *Kladis* because the POD camera videos are discoverable just as the in-squad police videos because they are relevant to the truth-seeking process and may provide helpful evidence to both sides.

¶ 30     The State's arguments are waived. The record indicates that the State did not object or claim that the POD camera videos were not discoverable under Rule 415(g)(i) or as a due process violation in the trial court. To the contrary, it is undisputed that the State conceded that the POD camera videos existed but were ultimately written over, that defendant made a timely request, and that the State failed to produce the videos. Since the State did not dispute in the trial court the issue of whether the POD camera videos were discoverable under Rule 415(g)(i) or as a due process violation, the State's arguments are now forfeited. See *Herron*, 215 Ill. 2d at 175.

¶ 31     Moreover, the State's argument that the trial court misapplied *Kladis* to find a discovery violation is unpersuasive. In *Kladis*, the supreme court affirmed the trial court's imposition of discovery sanctions, barring the State from presenting testimony as to the events surrounding a defendant's arrest, after it was discovered that the State destroyed the videotape of a traffic stop. *Kladis*, 2011 IL 110920, ¶ 1. Specifically, the supreme court held that the State's failure to produce and preserve the video recording constituted a discovery violation because those recordings were discoverable where the recordings were a routine and integral part of traffic stops and objectively documented the occurrence by capturing the conduct and words of both parties. *Id*. ¶ 29. The court observed that the video recordings are relevant and admissible evidence because they reveal what transpired during the traffic stop to further the truth-seeking function of a trial. *Id*. ¶ 37.

¶ 32     Similarly, in the instant case, defendant made a timely request for the POD camera videos and the State failed to produce it. Just as in *Kladis*, the information provided by the POD camera videos could have potentially been helpful to both the defendant and the State and would have served the truth-seeking function in the trial court. Specifically, according to the stipulation of the parties, the POD cameras were focused on the "primary area" of Western Avenue, both north and south where defendant's stop, field test and the arrest occurred. The stipulation also indicates that the incident lasted at least 20 minutes and, because the cameras rotate, they would have captured at least some part of defendant's stop and arrest. The mere fact that the POD cameras may not have captured 100% of defendant's arrest does not mean that the videos are not discoverable.

¶ 33     Moreover, the record reflects that the State did not dispute that the POD camera videos were discoverable and, instead, implicitly acknowledged that its failure to produce the videos constituted a discovery violation when it asked for limited sanctions. Specifically, the assistant State's Attorney stated the following: "So we ask that [the trial court] consider the lack of the pod camera [videos] to go against the State but not not to allow the officers to testify about the

arrest." Accordingly, we cannot say that based on the proceedings before the trial court, the trial court's reliance on *Kladis* in finding a discovery violation was misplaced. Therefore, the only issue remaining is whether the trial court abused its discretion when it sanctioned the State by precluding the testimony of the police officers regarding the circumstances of defendant's arrest.

¶ 34   The State contends that the trial court abused its discretion in excluding the testimony of the police officers. The State claims that the sanction imposed by the trial court was disproportionate to the discovery violation because it amounted to an effective dismissal of the case against defendant. The State contends that the sanction was unduly harsh where there was no evidence of a "willful violation" of discovery rules by the State and was contrary to the discovery sanction's goal of promoting the truth-seeking process. The State also argues that the sanction in this case was broader than the one applied in *Kladis*, arguing that the trial court never established the parameters for the testimony of the officers.

¶ 35   The correct sanction to be applied for a discovery violation is a decision appropriately left to the discretion of the trial court, and its judgment shall be given great weight. *Id*. ¶ 42. Rule 415(g)(i) authorizes the trial court to impose sanctions for the inadvertent failure to follow discovery orders: "If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, exclude such evidence, or enter such other order as it deems just under the circumstances." Ill. S. Ct. R. 415(g)(i) (eff. Oct. 1, 1971). A discovery rule violation by the State may occur whether or not the State's neglect was inadvertent or purposeful. *People v. Leon*, 306 Ill. App. 3d 707, 713 (1999); *People v. Heinzmann*, 232 Ill. App. 3d 557, 560 (1992) (dismissal sanction appropriate even though State's violation was inadvertent).

¶ 36   In the instant case, the trial court barred the State from introducing the testimony of the police officers concerning the facts and the circumstances of the stop, investigation, and arrest of the defendant because the State failed to produce the POD camera videos of those events, despite defendant's timely request for those videos. The trial court gave due consideration to the fact that both the State and the Chicago police department failed to preserve the videos, even though they were timely notified to do so. The sanction imposed by the trial court was within the bounds of the court's discretion. See *Leon*, 306 Ill. App. 3d at 713-14 (faced with a discovery violation, the trial court may order a variety of sanctions including the exclusion of evidence, dismissal, granting a new trial when the defendant is denied a full opportunity to prepare his defense and make tactical decisions with the aid of the information withheld).

¶ 37   In addition, contrary to the State's argument otherwise, the trial court's decision to impose the sanctions against the State was in accord with *Kladis*. The *Kladis* court specifically noted that "[t]he trial court is in the best position to determine an appropriate sanction based upon the effect the discovery violation will have upon the defendant." *Kladis*, 2011 IL 110920, ¶ 42. Here, while the trial court did not establish the parameters for the testimony of the officers, the trial court acted within its discretion by precluding the testimony of the police officers altogether. See *People v. Harper*, 392 Ill. App. 3d 809, 821-22 (2009); *People v. Pearson*, 210 Ill. App. 3d 1079, 1085 (1991).

¶ 38   The State cites *People v. Camp*, 352 Ill. App. 3d 257 (2004), for the proposition that the sanction imposed by the trial court was disproportionate to the discovery violation. In *Camp*,

the defendant moved to dismiss DUI charges against him, arguing that he could not receive a fair trial because the State lost a videotape of his field sobriety tests. *Id*. at 258. The trial court granted the request. *Id*. On appeal, the defendant did not file a brief, and this court found that the State has established a *prima facie* case for the trial court's error. *Id*. at 260. This court reversed the trial court's judgment on the basis that dismissal of the charges was an excessive sanction for the loss of the tape by the State and remanded the case back to the trial court to consider the appropriate sanctions under Rule 415(g)(i) for the State's discovery violation. *Id*.

¶ 39    The State's reliance on *Camp* is misplaced. Unlike in *Camp*, defendant did file a brief, and this court uses an abuse of discretion standard to decide whether the trial court erred in precluding the testimony of the police officers that amounted to a dismissal of the case against defendant. See *Kladis*, 2011 IL 110920, ¶ 23. As previously discussed, we cannot say that the sanction imposed by the trial court was "fanciful, arbitrary, or unreasonable to the degree that no reasonable person would take the view adopted by the trial court." *Id*. ¶ 42 (citing *People v. Ortega*, 209 Ill. 2d 354, 359 (2004)). Therefore, the trial court did not abuse its discretion in precluding the testimony of the police officers when the State committed a discovery violation.

¶ 40    CONCLUSION

¶ 41    Accordingly, we affirm the judgment of the circuit court.

¶ 42    Affirmed.