2021 IL App (1st) 192109-U
No. 1-19-2109
Order filed May 24, 2021

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 10259 (01) |
| | ) | |
| ARCHIE LEE, | ) | Honorable |
| | ) | Joan Margaret O'Brien, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE HYMAN delivered the judgment of the court.
Justices Pierce and Coghlan concurred in the judgment.

**ORDER**

¶ 1     *Held*:  We affirm the trial court's judgment finding no error in rulings on Lee's pretrial motion to dismiss, the State's motion *in limine*, and the motion for a new trial reasserting those claims. We similarly find no error in the trial court's decision not to order transcripts of the hearings over which she did not preside before ruling on the motion for a new trial.

¶ 2     Chicago police officers, responding to a call of a burglary in progress at a restaurant, arrived and arrested Archie Lee inside. The first responding officer drove a marked squad car, equipped with a camera mounted on the dashboard. The camera only activates when the officer turns on the emergency equipment, and here the officer turned his lights and siren off before

arriving. The camera had recorded video for a few minutes before the officer received a call about the burglary.

¶ 3    Before trial, Lee's counsel moved to dismiss the charges arguing the State had improperly allowed the squad car video to be "purged." A subpoena response from the Chicago Police Department shows that *a* video from the relevant officer's squad car had been purged on the Department's 90-day retention schedule. After a hearing at which the officer testified he pulled up to the restaurant facing away from the building and so would not have captured video of anyone outside the restaurant, the trial court denied Lee's motion. The court granted the State's motion in *limine* barring Lee from putting information about the video "purge" in front of the jury.

¶ 4    Lee now asks us to reverse asserting error in both the trial court's pretrial rulings regarding the video. Considering the record in totality, we find the evidence insufficient to support the existence of video from the officer's squad car for the relevant time. Therefore, the trial court properly denied Lee's motion to dismiss and properly granted the State's motion *in limine*. We also find no error in the trial court's conduct of proceedings on Lee's motion for a new trial, and affirm his conviction and sentence.

¶ 5                                    Background

¶ 6    Natividad Cortez owned the Rainbow Beach Sub Shop at 7520 South Exchange Avenue, Chicago. On June 9, 2016, Cortez went to work at 8:00 a.m. and stayed until about 4:00 p.m. When he left, some of his employees were still there. Before the shop closes at 7:00 p.m., the employees are supposed to clean up, lock the doors, and close the gates. The back door has two parts—a large metal door with a small window near the top and a metal mesh outer door. The shop has security cameras.

¶ 7    One of Cortez's employees, Roland Daniels, left at 6:30 p.m. for a second job at a nearby restaurant. Nothing inside Rainbow Beach was damaged when he left. While driving a delivery for his second job around 12:30 a.m. on the morning of June 10, he passed Rainbow Beach and everything looked normal. He went by again around 2:00 a.m., taking a coworker home. His coworker heard a sound, and they turned down the music in the car. Daniels then heard "a real loud banging noise" coming from the side of Rainbow Beach. He saw "two black males" trying to get into the shop. Though he could not see their faces, he could tell the shorter one was "beating and prying the door," and the taller one was "looking and checking."

¶ 8    Daniels tried to charge his phone at a nearby Metra station, but when it would not charge fast enough, he went to a nursing home down the street and called 911. The police arrived and "came out [of the shop] with two guys." Daniels was, again, unable to see their faces.

¶ 9    Chicago Police Officer Daniel Brown received a call about a burglary in progress at Rainbow Beach at about 2:30 a.m. When he arrived nine minutes later,  he heard a loud banging sound coming from inside the restaurant. Brown's partner called for backup and, while they waited, Brown noticed the rear door had been damaged. After backup arrived, Brown led the officers inside the shop. He saw Lee crouched down next to the ATM in the dining room and codefendant, Kevin Creed, across the dining room. Both had on gloves. Brown noticed that the wires to the security cameras appeared to have been cut, the cash register appeared to have been pried open, and the ATM was partially disassembled and had crowbars sticking out of the bottom.

¶ 10    Brown acknowledged that there was no video from inside his squad car, despite his car having a camera. He explained that the camera only records when his lights are activated. On the way to Rainbow Beach, he turned his lights off a few blocks away because he did not want to alert

possible offenders when he arrived. To the best of his knowledge, because he had turned his squad car lights off, the camera was not recording.

¶ 11    Later that morning, Cortez identified several photographs of damage to the outer metal screen door, a broken window on the inner "master door," the broken ATM, and "cracked" or "busted" security cameras. He also identified photographs of two crowbars and a screwdriver. Evidence Technician Jessica Harris collected the crowbars and screwdriver. Her examination, however, revealed no surfaces suitable for recovering fingerprints.

¶ 12    Chicago Police Detective Edmond Beazley interviewed Lee and Creed the morning of their arrest. Lee admitted the two had broken into the restaurant because they were experiencing money and drug problems. Lee told Beazley that the two had taken turns prying open the back door and, after realizing there was no money in the cash register, they set to work on the ATM. They were working on opening the bottom part of the ATM when arrested. Creed told a similar story, adding that the two had driven from Rockford on June 9.  Creed admitted taking turns with Lee to get into the restaurant, but declined comment about anything to do with the ATM or security cameras.

¶ 13    Creed testified on Lee's behalf, distancing himself from his statement to Beazley. Creed testified he alone pried open the back door and broke into Rainbow Beach and Lee was nowhere near the shop when Creed tried to break open the ATM. According to Creed's testimony, he had dropped Lee off at his sister's house much earlier on June 9.

¶ 14    After hearing this evidence, a jury found Lee guilty of one count of burglary and one count of possession of burglary tools.

¶ 15    Lee's counsel filed a motion for a new trial alleging two pretrial errors. She had moved to dismiss Lee's indictment on the ground that one of the squad car videos responding to the burglary

had been " 'purged' based on the [Chicago Police] department's retention schedule." According to Lee, there would have been squad car video "material to disproving the State's version of events." At a pretrial hearing, Brown had testified that he parked facing away from the restaurant when he pulled into the parking lot. The trial court denied Lee's motion finding the purged video would not have shown anyone inside or outside Rainbow Beach, given the angle of the squad car.

¶ 16    The State had also filed a motion *in limine* asking the trial court to exclude "any testimony or reference about the lack of or destruction of in-car squad camera" video. The trial court allowed Lee's counsel to elicit testimony that there was no squad car video and to ask why there was no video and barred any testimony "about something being purged."

¶ 17    At the hearing on Lee's motion for a new trial, his counsel argued that both decisions prejudiced her defense because her theory had been that Lee was walking up to the scene when police arrived, and was not inside. In her view, the purged squad car video would have been the best evidence of that theory. The State responded that the purged video would not have shown anything Lee believed it would have because the video had been turned off before officers arrived. After considering these arguments, the trial court denied Lee's motion for a new trial.

¶ 18    After a hearing, the trial court sentenced Lee to eight years in prison.

¶ 19                                    Analysis

¶ 20    Lee argues the trial court should have granted his motion to dismiss based on the destruction of Brown's squad car video and should have denied that portion of the State's motions *in limine* preventing him from eliciting testimony about the video's destruction. Alternatively, Lee argues that new evidence at trial rendered the trial court's decision to deny his motion for a new trial on either of those grounds unreasonable. Finally, Lee argues we should at least vacate the trial

court's denial of his motion for a new trial on the ground that the court did not consider all the relevant evidence before ruling, namely transcripts from the hearings on the challenged motions. We disagree with Lee's arguments and affirm.

¶ 21                                    *Missing Squad Car Video*

¶ 22    Lee primarily argues that the trial court should have dismissed the indictment against him because the Chicago Police Department "purged" squad car video in violation of *People v. Kladis*, 2011 IL 110920. Lee also argues that the destruction of Brown's squad car video violated his due process right to present a defense. See generally *People v. Newberry*, 166 Ill. 2d 310 (1995). The State responds that both arguments fail because no evidence indicates that the video from Brown's squad car ever existed and, if it did exist, it would not have been materially exculpatory. As to Lee's due process claim, the State argues that it did not act in bad faith (assuming a purge) and so no due process violation occurred. We agree with the State that there is insufficient evidence that squad car video of the incident existed, and so do not determine whether the State acted in a manner implicating Lee's due process rights. See *In re E.H.*, 224 Ill. 2d 172, 178 (2006) ("cases should be decided on nonconstitutional grounds whenever possible").

¶ 23    Video recordings made during police interactions with civilians are generally discoverable in criminal proceedings. See *Kladis*, 2011 IL 110920, ¶29. These recordings "assist in the truth-seeking process" as they provide objective evidence confirming or refuting witness testimony. *Id.*, ¶ 34. The State, accordingly,  must preserve relevant video recordings when requested before the video's scheduled destruction. *Id.*, ¶¶ 38-39. Sanctions for discovery violations fall within the discretion of the trial court. We will not overturn a decision to impose or abstain from imposing sanctions absent an abuse of the court's discretion. *Id.*, ¶ 42.

¶ 24    Lee first argues the trial court erred in denying his motion to dismiss because the State's failure to ensure the preservation of Brown's squad car video violated the retention requirements of the criminal eavesdropping statute. The statute allows for exceptions to liability for eavesdropping when, potentially relevant here, "recordings [are] made simultaneously with the use of an in-car video camera recording of an oral conversation between a uniformed peace officer, who has identified his or her office, and a person in the presence of the peace officer whenever (i) an officer assigned a patrol vehicle is conducting an enforcement stop; or (ii) patrol vehicle emergency lights are activated or would otherwise be activated if not for the need to conceal the presence of law enforcement." 720 ILCS 5/14-3(h) (West 2020). These recordings "shall be retained by the law enforcement agency *** for a storage period of 90 days" or until the final disposition of any proceeding in which they are sought to be used. *Id.* § 14-3(h-15).

¶ 25    Assuming, without deciding, the eavesdropping statute applies to the disputed recording, Lee failed to meet his burden to establish facts warranting dismissal of the charges against him. *People v. Young*, 220 Ill. App. 3d 488, 492 (1991) (defendant seeking dismissal "bears a heavy burden of showing actual and substantial prejudice"). Lee cannot make that showing because he did not produce evidence at the hearing on the motion to dismiss that Brown's squad car camera video had been activated during the relevant time or, if it was, that it showed anything relevant to the charges against him.

¶ 26    Indeed, Lee only argues that the video would have captured images of him outside the Rainbow Beach, contradicting the officers' trial narrative that they arrested Lee inside. But the trial court resolved that factual question against him. Brown testified at the hearing on the motion to dismiss that he parked in the Rainbow Beach lot facing the street, not the shop. Lee argues

Brown was equivocal, saying things like "I believe" and "I think so." The trial court's ruling on the motion to dismiss acknowledged that Brown's testimony was "to the best of [his] knowledge," and Brown's minor qualifications do not convince us that the trial court's resolution constituted an abuse of discretion.

¶ 27    Had we any doubt that the trial court's ruling on Lee's motion to dismiss was correct, we resolve it in the State's favor based on Brown's trial testimony. See, *e.g., People v. Strong*, 316 Ill. App. 3d 807, 814 (2000) (where defendant reasserts issue raised in pretrial motion in motion for new trial, court can consider motion hearing testimony and trial testimony). Brown explained as he had at the motion to dismiss hearing, that his squad car only recorded video when he activated his "emergency equipment." But he turned off his lights and sirens as he approached Rainbow Beach, and so the camera would not have been recording. At the hearing on the motion to dismiss, Lee's counsel did not ask questions concerning whether Brown's lights or siren (or both) remained on when he arrived. Nothing in the record contradicts Brown's trial testimony.

¶ 28    The record, when considered in its entirety, shows no video of the incident. The State cannot have committed a discovery violation for failing to ensure preservation of a video that did not exist. *People v. Strobel*, 2014 IL App (1st) 130300, ¶ 11. The trial court did not abuse its discretion in denying Lee's motion to dismiss and did not err in denying his motion for a new trial raising the same claim.

¶ 29                                    *Motion in Limine*

¶ 30    Lee also argues the trial court erred in granting the State's motion *in limine* precluding him from eliciting testimony about the destruction of Brown's squad camera video. The State responds that no video of the officers' actions at the Rainbow Beach ever existed, and the trial court properly

granted its motion. As with Lee's motion to dismiss, we review the trial court's decision for an abuse of discretion. *E.g. People v. Gliniewicz*, 2018 IL App (2d)170490, ¶ 32.

¶ 31    In its motion *in limine*, the State explained that Brown's squad car camera recorded from 2:25:55 a.m. to 2:28:49 a.m. Brown did not receive the call to go to the Rainbow Beach until 2:31 a.m. and did not arrive until 2:39 a.m. The State argued, based on the video log, the squad car's camera could not have captured video of Lee's arrest or the officers' approach to the restaurant. Lee argues we cannot account for this information because the State never substantiated its claims. But motions *in limine* often depend on "counsel's representations or offers of proof." *Id.* As long as the motion is "as specific as possible" and "set[s] out all relevant facts," the court can rule on it. *Id.* The State's motion contained the specific information the trial court needed to make a preliminary evidentiary ruling.

¶ 32    The information in the State's motion showed that Brown's squad car camera was not recording and would not have shown the circumstances of Lee's arrest. Testimony about the purging of the video would have been irrelevant to Lee's guilt or innocence; it did not show any of the events at Rainbow Beach. So the trial court did not abuse its discretion in granting the State's motion *in limine*.

¶ 33    Of significance, rulings on motions *in limine* are preliminary, and the trial court can always alter them if or when more information comes out at trial. *Id.* And, as we have discussed, the testimony at trial confirmed the State's representations in its motion *in limine*. Brown said that his squad camera was not recording because he had deactivated his emergency lights before arriving. Trial testimony confirmed the correctness of the trial court's *in limine* evidentiary ruling, and we find no error in denying Lee's motion for a new trial.

¶ 34                                   *Failure to Consider Record*

¶ 35    As a final alternative argument, Lee claims the trial judge who ruled on his motion for a new trial failed to consider the whole record in deciding. Because a different judge ruled on the motion to dismiss, Lee argues, the trial judge should have ordered transcripts and considered the record of those proceedings. The State responds that nothing contradicted the information elicited at the hearing on the motion to dismiss and the motion for a new trial. Thus, the transcripts from the hearing on the motion to dismiss were unnecessary. We see nothing in this record showing the trial judge had a particular need to order the transcripts and find no error.

¶ 36    The judge presiding over a motion for a new trial need not be the same judge who presided at earlier proceedings. *Somora v. Ahstrom*, 6 Ill. App. 3d 1034, 1035 (1972). In *Somora*, the sole case on which Lee relies, the judge presiding over the motion for a new trial had not presided over the trial itself, and counsels' representations about what happened at trial differed. *Id.* at 1036. Here, the motion judge was the trial judge. She heard all the trial evidence. She found the evidence "overwhelming." And, even if her review of the claims about the motion to dismiss and motions *in limine* were truncated, error would be harmless. As we explained, the trial testimony did nothing but confirm the soundness of the pretrial rulings, and the judge who ruled on the motion for a new trial heard all that evidence.

¶ 37    We find no error in the conduct of the proceedings on the motion for a new trial.

¶ 38    Affirmed.